**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| JOLENE CONOSCENTI, | : CIVIL ACTION NO. 07-3359 (MLC) |
| Plaintiff, | : **MEMORANDUM OPINION** |
| v. | : |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

**COOPER, District Judge**

The plaintiff, Jolene Conoscenti, applies for judicial review of the final decision of the defendant, Commissioner of Social Security Administration ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). (Dkt. entry no. 1.) The Court has jurisdiction pursuant to 42 U.S.C. § ("Section") 405(g). The Court, for the reasons stated herein, will affirm the Commissioner's decision.

## BACKGROUND

The plaintiff filed a claim for DIB on April 27, 2004, alleging that she became unable to work on approximately October 15, 1992. (Administrative Record ("A.R."), at 63.) The Commissioner denied the claim on August 20, 2004. (Id. at 58.) The plaintiff filed a timely request for a hearing before an administrative law judge. (Id. at 62.) Administrative Law Judge

Peter F. Crispino ("ALJ") conducted a hearing on April 25, 2006, in which the plaintiff was represented by counsel. (Id. at 23.)

The ALJ issued a decision on September 7, 2006, finding, inter alia, that (1) the plaintiff "met the nondisability requirements for a period of disability and [DIB] set forth in Section 216(i) of the Social Security Act and was insured for benefits through December 31, 1998", (2) the plaintiff "has not engaged in substantial gainful activity since the alleged onset of disability", (3) the plaintiff's "cervical spondylosis, cervical facet syndrome, cervical radiculopathy and non-progressive moderate idiopathic scoliosis were considered 'severe' on and before December 31, 1998 based on the requirements in the Regulations 20 C.F.R. § 404.1520(c)", (4) the plaintiff's "medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4", (5) the plaintiff's "allegations regarding her limitations were not totally credible, based on medical evidence on and before December 31, 1998", (6) "[o]n and before December 31, 1998, [the plaintiff] had residual functional capacity to perform the demands of light work", (7) the plaintiff's "past relevant work as [a] human resources recruiter did not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R. § 404.1565)", (8) the plaintiff's "medically determinable impairments did not prevent [her] from performing her past

2

relevant work at all times on or before December 31, 1998", and (9) the plaintiff "was not under a 'disability,' as defined in the Social Security Act at any time through her date last insured (20 C.F.R. § 404.1520(f))."  (Id. at 19-20.)

The ALJ concluded that the plaintiff was not entitled to DIB payments.  (Id. at 20.)  The plaintiff requested review of the ALJ's decision by the Appeals Council on September 18, 2006.  (Id. at 9.)  The Appeals Council denied the plaintiff's request for review on May 25, 2007.  (Id. at 4.)  The plaintiff applied for review here on July 19, 2007.  (Dkt. entry no. 1.)

**DISCUSSION**

**I.   Standard Of Review**

The Court may review a "final decision of the Commissioner of Social Security" in a disability proceeding.  42 U.S.C. § 405(g). The Court may affirm, modify, or reverse the Commissioner's decision with or without remanding the case for a rehearing.  Id. However, this judicial review is limited.  The Court must affirm the Commissioner's decision regarding disability benefits if an examination of the record reveals that the findings of fact are supported by substantial evidence.  Id.; Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003).  "Substantial evidence" in the context of a social security matter is defined as less than a preponderance of the evidence but "more than a mere scintilla", i.e., such evidence "as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

3

U.S. 389, 401 (1971) (quotation and citations omitted).  This standard "is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence."  Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

   Despite the deference given to administrative decisions under this standard, the Court "retain[s] a responsibility to scrutinize the entire record and to reverse or remand if the . . . decision is not supported by substantial evidence."  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).  Furthermore,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).  "That the record contains evidence which could have supported a different conclusion does not undermine" the Commissioner's decision provided that the record contains substantial evidence supporting that decision.  Rivera v. Shalala, No. 94-2740, 1995 WL 495944, at *3 (D.N.J. July 26, 1995).  The Commissioner is required, however, to address and reconcile medical evidence that would support a contrary conclusion.  Schaudeck, 181 F.3d at 435.

## II.  Determining Eligibility For Disability Benefits

The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months".  42 U.S.C. § 423(d)(1)(A).  An individual is determined to be disabled if the individual's "physical or mental impairment or impairments are of such severity that [the individual] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy".  Id. at § 423(d)(2)(A).

An ALJ employs a five-step process in determining whether a person is "disabled".  In the first step, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity".  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is so engaged, the ALJ will find that the claimant is not disabled and deny the application for disability benefits.  Id. at § 404.1520(b).  If the claimant is not employed, the ALJ will consider the medical severity and duration of the claimant's impairment or combination of impairments in the second step.  Id. at § 404.1520(a)(4)(ii).  A "severe impairment" is one that significantly limits the claimant's physical or mental ability to

5

do basic work activities, including, inter alia, (1) sitting, lifting, and speaking, (2) responding appropriately to supervision and co-workers, and (3) understanding, carrying out, and remembering instructions.  Id. at §§ 404.1521(a)-(b), 416.921(a)-(b).  A claimant not meeting this requirement is not disabled.  Id. at § 404.1520(c).  Thus, the second step requires a threshold-level demonstration of severe impairment without consideration of the claimant's age, education, and work experience.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

If the claimant shows a severe impairment, the ALJ then moves to the third step to determine whether the impairment is listed in section 20, part 404, subpart P, appendix 1 of the CFR.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment meets or equals a listed impairment, then the claimant is presumed to be disabled, and the evaluation ends at this stage.  Id. at § 404.1520(d).  If the impairment does not meet or equal a listed impairment, then the ALJ proceeds to step four.  Id. at § 404.1520(a)(4).

The ALJ must determine at step four whether the impairment prevents the claimant from returning to the work that the claimant performed in the past.  Id. at § 404.1520(a)(4)(iv).  The claimant, if able to resume the previous work, will not be considered disabled.  Id.  If the claimant cannot resume previous work, the ALJ then moves to step five and considers the claimant's ability to perform other work that is available in the

national economy.  Id. at §§ 404.1520(a)(4)(v), 404.1520(e).
This inquiry requires the ALJ to consider the claimant's residual
functional capacity ("RFC"), age, education, and past work
experience.  Id.  A claimant will be found disabled if the
claimant is unable to adjust to any other work in the national
economy.  Id. at § 404.1520(g).

The claimant has the initial burden of production for the
first four steps of the evaluation process.  Plummer v. Apfel,
186 F.3d 422, 428 (3d Cir. 1999).  Once a claimant meets this
burden, the burden shifts to the Commissioner in step five to
show that the claimant has the transferable skills that would
allow him or her to engage in alternative substantial gainful
employment.  Id.

**III. Analysis of The Plaintiff's Claim**

The plaintiff argues that the ALJ's findings are not
adequately explained and are not supported by substantial
evidence.  (Dkt. entry no. 11, Pl. Br., at 4.)  Specifically, the
plaintiff argues that the ALJ erred by (1) concluding at step two
that plaintiff's right hip impairment was not a severe impairment
and failing to explain this finding, (2) failing to provide an
adequate explanation of his determination that the plaintiff's
impairments did not equal a listing at step three of his
analysis, (3) failing to support the finding that the plaintiff's
RFC enabled her to perform her past work at all times on and

before December 31, 1998, and (4) failing to explain why the plaintiff's allegations of her inability to sit, stand, or walk for long periods lacked credibility.  (Id.)  The Commissioner argues, by contrast, that "substantial evidence of record demonstrates that plaintiff's alleged impairments did not prevent her from performing her past work."  (Dkt. entry no. 13, Def. Br., at 1.)

In determining whether a claimant is entitled to disability benefits, the ALJ "must consider all evidence and give some reason for discounting the evidence [the ALJ] rejects." Plummer, 186 F.3d at 429.  The ALJ need not engage in a comprehensive analysis when explaining why probative evidence is being rejected.  Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981). Rather, a short sentence or paragraph explaining the basis upon which the ALJ is rejecting evidence will suffice.  Id.  The ALJ is not required to reference each and every treatment notation with particularity in the analysis, but must "consider and evaluate the medical evidence in the record consistent with [the] responsibilities under the regulations and case law." Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).  An ALJ "may choose whom to credit" when a conflict in the evidence exists, but may not "reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (quotation and citation omitted).  This policy allows the Court to properly review the ALJ's decision

pursuant to Section 405(g) to determine whether the decision is supported by substantial evidence. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). The Court, without an indication as to what evidence the ALJ considered or rejected, "cannot tell if significant probative evidence was credited or simply ignored." Id. Although the ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," the ALJ's findings must provide "sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

The Court need not examine the ALJ's step one determination that the plaintiff has not engaged in work activity after her alleged disability onset date. (See A.R., at 19.) Further, the Court need not consider step five because the Court finds that the ALJ's step four determination that the plaintiff could return to her past work is supported by substantial evidence. (See id. at 19-20.) Therefore, the Court will address the ALJ's determinations at steps two, three, and four of the sequential analysis.

**A.   Sufficiency of the ALJ's Explanation at Step Two**

The plaintiff contends that the ALJ erred when he "failed to find the Plaintiff's right hip impairment 'severe' and neglected to explain this fact". (Pl. Br., at 8.) The plaintiff further contends that her (1) "hip impairment is more than 'a slight

9

abnormality that causes no more than minimal limitation in the individual's ability to function'", and (2) "allegations are fully supported by the medical evidence as well as her hearing testimony." (Id. at 9-10.)

This Court disagrees. The ALJ sufficiently evaluated and weighed the medical evidence in reaching the conclusion that the plaintiff's hip impairment is not severe. (See A.R., at 19.) "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). To show that an impairment is severe, however, a claimant must demonstrate "something beyond a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) (quotation and citations omitted). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include "abilities and aptitudes necessary to do most jobs", including, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling". 20 C.F.R. § 404.1521(b).

The ALJ's findings provide substantial evidence in support of the decision that the plaintiff's hip impairment is not severe. The extensive medical record contains little reference

10

to any pain around the hip area before 1997. (See A.R., at 16-18.) In October 1991, the plaintiff complained of "pains in the right buttock and down the right leg". (Id. at 16.) The ALJ noted that the plaintiff reported "'a clicking sound with pain in the area of the right pelvic brim and right hip'", and "[a]n August 7, 1997 X-ray of the pelvis and right hip revealed 'mild arthritic changes' of the right hip." (Id. at 16-17.) However, the reported "pain in the right hip and right pelvic brim area 'spontaneously resolved after [the plaintiff] was doing stretching exercises in a pool.'" (Id. at 17.) Further, examinations of the plaintiff in 1998 revealed that (1) "[m]otor strength was 5/5 in the bilateral lower extremities", (2) "[r]ange of motion was functional," and (3) the plaintiff had only "'mild pain' on range of motion". (Id. at 17-18.)

   The ALJ also addressed the plaintiff's subjective complaints of hip pain contained in her testimony. (Id. at 38-39.) While the ALJ recognized that the plaintiff did have hip pain at various times, he found the plaintiff's allegations of extreme pain lacked credibility based on the medical record, as supported by the medical evidence discussed supra. (Id. at 19.) Based upon the medical evidence, therefore, the ALJ sufficiently supported a conclusion that the plaintiff's hip impairment was only a "slight abnormality" and "would have no more than a

11

minimal effect on an individual's ability to work." See McCrea, 370 F.3d at 360 (quotation and citations omitted).

The Court thus concludes that the ALJ's determination that the plaintiff's hip impairment was not severe is supported by substantial evidence in the record. The ALJ examined the available medical and testimonial evidence, including the plaintiff's testimony, in determining the severity of the plaintiff's impairment. (See A.R., at 16-19.)

**B.   Sufficiency of the ALJ's Explanation at Step Three**

The plaintiff also argues that the ALJ's finding that the plaintiff's impairments do not meet or equal a listing is founded upon "[i]nadequate rationale". (Pl. Br., at 10.) Specifically, the plaintiff contends that "the ALJ failed to provide any discussion of which listings he considered, and did not provide an analysis comparing the objective findings to the requirements of the relevant listings in this case." (Id.)

This Court disagrees. The ALJ provided sufficient explanation supported by substantial evidence in the record for his finding that the plaintiff's alleged impairments did not meet or equal criteria established for a listed impairment under Social Security regulations. (See A.R., at 15-16.) In step three of the sequential analysis, "the ALJ must determine whether the impairment is equivalent to one of a number of listed impairments the Commissioner acknowledges are so severe as to preclude substantial gainful activity. If the impairment meets

12

or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." Pearson v. Barnhart, 380 F.Supp.2d 496, 504 (D.N.J 2005) (quotations and citations omitted). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five, where the ALJ "must determine whether the claimant retains the ability to perform either his former work or some less demanding employment." Id. (quotation and citation omitted).

The plaintiff argues that "the Court 'requires more than just a conclusory statement that a claimant does not meet the listings'", citing to Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112 (3d Cir. 2000), to support this assertion. (Pl. Br., at 10-11.) The ALJ, however, is not required "to use particular language or adhere to a particular format in conducting his analysis." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). Rather, the ALJ's findings need only provide "sufficient development of the record and explanation of findings to permit meaningful review." Id.

The ALJ's opinion here provided a thorough review of all of the medical records and a comprehensive discussion of the plaintiff's condition to create a sufficient basis for judicial review. (See A.R., at 16-18.) At step two, the ALJ found that the plaintiff's cervical spondylosis, cervical facet syndrome, cervical radiculopathy and non-progressive moderate idiopathic

13

scoliosis constitute "severe" impairments that impose significant restrictions on her ability to perform basic work activities. (Id. at 19.)  With regard to step three of the analysis, the ALJ found that the plaintiff's "impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4."  (Id. at 20.)

    The ALJ performed an exhaustive review of the plaintiff's medical records.  (See id. at 16-18 (discussing plaintiff's medical records).)  Contrary to the plaintiff's assertion that the ALJ "summarily dismissed [her] allegations of pain and weakness as . . . not credible to the extent alleged . . . provid[ing] no details as to how he reached this conclusion", the ALJ did explain why the plaintiff's subjective complaints were not supported by the medical record.  (Id. at 19; Pl. Br., at 13.)  The ALJ acknowledged that "[t]he record is clear that the [plaintiff] did have neck, back, and hip impairments at various periods during which she received treatment with relief of symptoms."  (A.R., at 19.)  However, the ALJ determined that the plaintiff's "testimony of a significantly restricted functional capacity prior to and at her date last insured is not supported by the contemporary medical evidence, nor are her allegations of 'extreme' pain in the back, neck, and hips as well as weakness in her hands".  (Id.)

14

The ALJ extensively reviewed the medical evidence to support this conclusion, stating, inter alia, that: (1) "'[t]he neck pain and radiation down the left arm have markedly improved but not resolved'", (2) "[o]n July 23, 1997, [the plaintiff] reported that she 'no longer has neck pain or pain radiating down the arm'", (3) "pain in the right hip and right pelvic brim area 'spontaneously resolved after she was doing stretching exercises in a pool'", (4) the plaintiff "reported that she worked out on 'a treadmill, which she does faithfully'", (5) the plaintiff "denied neck pain or numbness in her arm 'for several years'", (6) the plaintiff "reported that 'she is independent in all activities' . . . she was alert and oriented in all three spheres, and in no acute distress", (7) "[r]ange of motion was functional, tone was normal, and sensation was normal", and (8) "there was 'mild pain' on range of motion with extension, side bending and rotation." (Id. at 17-18.)

The ALJ's review of the evidence was sufficiently thorough to warrant a finding that the plaintiff's condition did not match or medically equal any listing. (See id. at 16-18.) The ALJ in Burnett disregarded without acknowledgment or explanation the testimony of the claimant and objective medical diagnoses and reports, including one finding the claimant was "permanently and totally disabled"; the ALJ here, by contrast, examined the

15

material medical evidence and testimony, as discussed supra. (See A.R., at 16-20.)  See Burnett, 220 F.3d at 119-22.

The plaintiff's argument that the ALJ's analysis is deficient because he "failed to provide any discussion of which listings he considered" is also without merit.  (Pl. Br., at 10.) The ALJ is not required to identify specific listings in his analysis.  Jones, 364 F.3d at 505 (holding that "ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [plaintiff] did not meet the requirements for any listing").

The Court thus concludes that the (1) ALJ sufficiently examined the available medical and testimonial evidence, including the plaintiff's testimony, as discussed supra, and (2) determination that the plaintiff's impairments did not meet or medically equal one of the listed impairments is supported by substantial evidence in the record.

**C.   Sufficiency of the ALJ's RFC Assessment at Step Four**

The plaintiff also contends that the ALJ did not adequately support the basis for the light work RFC determination and the conclusion that the plaintiff has the ability to perform her past relevant work as a human resources recruiter.  (Pl. Br., at 11.) More specifically, the plaintiff argues that the ALJ erred by "provid[ing] no function-by-function analysis of the Plaintiff's

capabilities nor an explanation as to how he reached his conclusion." (Id. at 12.)

This Court disagrees. The ALJ adequately explained the basis for the light work RFC. (See A.R., at 19.) Further, substantial evidence supports the ALJ's RFC determination, including its application to the plaintiff's past relevant work. (See id. at 16-19.) The ALJ concluded that "[o]n and before December 31, 1998, [the plaintiff] had the residual functional capacity to perform the exertional demands of light work." (Id. at 20.) The ALJ explained that the medical evidence supported the RFC determination, and that "[b]ased upon the residual functional capacity, [the plaintiff] could have returned to her past relevant work as [a] human resources recruiter at all times on and before December 31, 1998." (Id. at 19.) Based upon the plaintiff's testimony, the ALJ determined that in the plaintiff's past work as a human resources recruiter "she sat for four hours, walked for three hours and stood for two hours, and lifted no more than 10 pounds." (Id.) Thus, the ALJ concluded that the plaintiff "could have returned to this occupation as performed" based on her RFC but also maintained the ability to work as a human resources recruiter "as it is generally performed in the national economy." (Id.)

The plaintiff contends that the "objective data as well as her testimony indicate that [she] suffered from chronic neck,

17

back[,] hip and knee pain during the adjudicative period, which interfered with her ability to stand, sit and walk." (Pl. Br., at 12.) The plaintiff further argues that based upon her impairments, "some postural and manipulative maneuvers would have been difficult, if not impossible, for her to perform." (Id.) Thus, the plaintiff argues that the ALJ erred by "fail[ing] to discuss any category of [her] functional abilities." (Id. at 13.)

    The Court disagrees, however, and finds that the ALJ's conclusions regarding the plaintiff's RFC and ability to perform her past relevant work on and before December 31, 1998 are supported by substantial evidence in the record. For example, medical records from Dr. Alexander Gecht state, inter alia, that (1) the plaintiff "'no longer has neck pain or pain radiating down her arm'", and (2) pain in her hip "'did improve on being in a pool and with stretching' exercises" and "'spontaneously resolved after she was doing stretching exercises in a pool.'" (A.R., at 17.) Medical records from Dr. Woo S. Tak state, inter alia, that (1) the plaintiff "reported that 'she is independent in all activities'", (2) the plaintiff "was alert and oriented . . . and in no acute distress" while being examined, and (3) the plaintiff's "[r]ange of motion was functional, tone was normal, and sensation was normal." (Id.) Records from Dr. Gerard P. Varlotta state, inter alia, that "there was 'mild pain' on range

18

of motion with extension, side bending and rotation." (Id. at 18.)  This evidence supports the ALJ's RFC determination.

The ALJ explained in his decision that the plaintiff's own statements regarding the impact of her impairments on her working ability were "not totally credible, based on the medical evidence". (Id. at 20.)  The ALJ also noted that the record demonstrates that the plaintiff "did have neck, back, and hip impairments at various periods", but that "her allegations of 'extreme' pain . . . are not credible to the extent alleged" based on the medical evidence. (Id. at 19.)

The plaintiff again relies on Burnett, where the court rejected the findings and analysis of an ALJ after concluding that the ALJ disregarded without acknowledgment or explanation both the testimony of the claimant and the objective medical diagnoses and reports, including one report finding the claimant "permanently and totally disabled". Burnett, 220 F.3d at 119-22.  In contrast, the ALJ here examined the extensive medical and testimonial evidence available, including reports by treating physicians and the plaintiff's own testimony, in accordance with his responsibilities under the Social Security Act and corresponding regulations. See Fargnoli, 247 F.3d at 42. Therefore, the Court concludes that the ALJ's determination that the plaintiff could perform light work activity and return to her past relevant work as a human resources recruiter at all times on

and before December 31, 1998 is supported by substantial evidence.  (See A.R., at 20.)

## CONCLUSION

For the reasons discussed supra, the Court will affirm the Commissioner's decision denying the plaintiff's claim.  The Court will issue an appropriate order.

                                           s/ Mary L. Cooper  
                                          **MARY L. COOPER**  
                                          United States District Judge

**Dated:**   June 12, 2008